Eliphalet A. Bulkeley *vs.* Henry K. W. Welch and Heman H. Barbour, Trustees.

Where securities in the hands of a creditor are wrongfully disposed of by him, so that the debtor has a claim upon him for damages for their loss, such damages can be set off against the debt, *pro tanto*, in an action at law brought by the creditor for the recovery of the debt.

A bill in equity, brought while such an action is pending, and which merely seeks an application of such damages to the debt, will not be sustained, as there is adequate remedy at law.

And the debtor has an independent remedy at law by trover or assumpsit.

The action at law in this case was brought by the trustees in insolvency of the original creditor. Held that their position, in its relation to the right of the defendant to set off the claim for the securities wrongfully disposed of by the creditor, was the same as that of the original creditor.

Bill in equity. The respondents were trustees in insolvency of the Hartford County Savings Association, and had brought an action at law against the petitioner upon sundry notes given by him to the association before its insolvency. The bill alleged that sundry stocks and bonds, placed by the petitioner in the hands of the association as collateral security for the notes, had been fraudulently disposed of by the association, and prayed for a decree applying the damages to which the petitioner was entitled to his indebtedness upon the notes. The respondents demurred to the bill, and the case was reserved by the superior court for the advice of this court. The case is more fully stated in the opinion.

*C. Chapman* and *Welch,* with whom was *Chamberlin,* in support of the demurrer.

*T. C. Perkins* and *Towle,* contra.

Sanford, J. This bill alleges that the petitioner executed and delivered to the Hartford County Savings Association, six promissory notes (particularly described) for his own proper debts, and two notes with John W. Seymour for the benefit of said Seymour; that he transferred and delivered to said association sundry bank stocks, railroad stocks, railroad bonds, and coupons for interest on such bonds, to be held by the association as collateral security for the payment of said notes, and that upon the transfer and delivery of said bonds, stocks and other property, said association undertook and was by law bound to keep and hold said collateral securities for the purposes above stated, and not to alienate or in any manner convert or dispose of the same without notice to or consent of the petitioner; but that said association, before its assignment, did " falsely, fraudulently and without notice to, or the knowledge or consent of the petitioner, dispose of, misappropriate

and convert, in some way to him unknown, all and singular said stocks, bonds and property, and have deprived the petitioner of all benefit and advantage thereof;" that said association and the respondents "neglect and refuse to give the petitioner any account of the disposal of said securities and other property, or to allow him any benefit thereof in said suit or otherwise, by way of extinguishment of the debts for which they were pledged, or of part payment or set-off, or in liquidation in any manner or to any extent of his said indebtedness or the interest thereon;" that said association is deeply insolvent and has assigned to the respondents all its property for the benefit of its creditors; that the respondents, as trustees under such assignment, have commenced an action at law for the recovery of the money due on all of said notes, which action is now pending in court; and that said Seymour is insolvent and has gone to parts unknown. And the petitioner prays the court to order an application of the damages occasioned to him by the conversion and misappropriation of said securities and property, as the same shall be found and ascertained by the court, in liquidation, offset and answer to the claims of said trustees on said notes in suit, and to enjoin said trustees against the further prosecution of said action.

To this bill the respondents demur for its insufficiency to entitle the petitioner to the relief for which he prays. We think the demurrer well taken.

So far as we can ascertain from the bill, the petitioner has an adequate remedy for the protection and vindication of his rights in the action at law now pending in court, and we see no occasion, and can find no justification, for the interference of a court of equity in his behalf. It seems to be the ordinary case of the pledge of personal property for the security of a debt, and the disposal and conversion of that property by the creditor without judicial sanction, and without notice first given to the debtor. No claim is made to the aid of a court of equity because of the peculiar kind of property pledged, nor because of any peculiar quality or value attached to that particular property, nor because there is any difficulty to be apprehended in ascertaining such value by evidence. The

petitioner does not ask for, either a discovery or an account of the proceeds of the property disposed of, nor does he aver that he has any reason to apprehend that the respondents, by discontinuing the action at law, will deprive him of the opportunity to try his claim and establish his defense in that suit, and leave him liable to future vexation and annoyance, nor that the notes in suit have been fully paid, and for that or any other reason ought to be canceled and given up. He proceeds entirely upon the assumption that he is entitled to nothing but unliquidated damages for a positive tort committed by the association, and that such damages a court of law will not require the respondents to set off, or in any way apply toward the payment of the debts for which the securities were pledged.

The legal right of the creditor, upon reasonable notice to the pledgor, to sell the goods pledged and appropriate the proceeds of the sale to the payment of his debt, is undeniable. The reception of the proceeds of a sale thus made, operates as a payment *pro tanto* or in full, and the law will make or enforce the application. And if the creditor sells without such notice he can not prevent the application. It can not lie in his mouth to say that he sold without authority. Having assumed and exercised the power, he can not deny its existence when the debtor's rights would be injuriously affected by such denial.

Upon the case stated in the bill the petitioner has an election of actions at law against the pledgee. He may maintain -trover for the wrongful conversion of the goods, or, waiving the tort, he may bring assumpsit for the value of the property or for the money received upon its sale ; but as he makes no claim on account of any peculiar quality or extraordinary value of the property itself, or of any aggravating circumstances attending its conversion, the market value of the property would be the measure of his damages, whatever the form of the remedy which he might adopt.

What the value of the property was can be shown by the testimony of witnesses acquainted with the market. The petitioner's claim therefore is not to such unliquidated damages,

Bulkeley *v.* Welch.

depending upon the opinion, judgment or discretion of a jury, as can not be set off against the respondents' debt in suit.

The loan and the pledge for its security were parts of one and the same transaction, and there is a peculiar fitness in requiring that the parties shall try and adjust their conflicting claims growing out of this one transaction in one suit; and we think they can do it without injury to either of them in the action pending when this bill was brought.

The plaintiffs in that suit stand in the place and represent the rights of the original creditor, and their power to enforce claims, and repel defenses, is neither more nor less than that of the association whose estate they were appointed to administer.

In the case of *Stearns* v. *Marsh*, 4 Denio, 227, goods had been pledged for the security of a note. The pledgee sold the goods without notice for less than the amount of the note, and brought his action for the balance of the debt, and the court held that the sale, having been made without authority, was wrongful, and that the pledgor was entitled to have the whole *value of the goods* and not merely the *proceeds of the sale* applied to the payment of the note. Jewett, J., said : " It is a rule that the creditor is to restore the pledge " (when the debt is paid,) " or make satisfaction for it. If he does not, he is to lose his debt." " By the common law the pledgee in such action brought for the tort," (the wrongful conversion or disposal of the property,) " has a right to have the amount of the debt *recouped* in the damages." " The defendants clearly had an election of remedies against the plaintiffs for the conversion of the pledge. They could maintain trover or assumpsit, and in the latter action could recover the value under the common counts. If assumpsit was maintainable by them they may in an action by the plaintiffs set off the value of the boots and shoes " (the property pledged) " as for such property sold. There is no valid objection on the ground that the damages are unliquidated or uncertain."

We can not listen with favor to any suggestion that injustice may accrue to either party from the prejudices of a jury. It is our duty to believe that impartial justice will be admin-

istered in all our courts and by all our juries in every case submitted to them.

Our courts of equity are authorized " to take cognizance only of matters in which adequate relief can not be had in the ordinary course of law," (Rev. Stat., tit. 12, sec. 1;) but if, as the petitioner claims, our courts of equity and courts of law have concurrent jurisdiction of this matter, and if, as we have endeavored to show, the superior court will afford to the petitioner adequate relief in the action at law, then the fact that that suit was and long had been pending when this suit was brought, affords a cogent if not conclusive reason for the refusal of a court of equity to interfere in the petitioner's behalf.

The petitioner's bill is insufficient.

In this opinion the other judges concurred.