H. O. SODERLIN v. MARQUETTE NATIONAL BANK
OF MINNEAPOLIS.[1]

March 5, 1943.

No. 33,425.

[1]Reported in 8 N. W. (2d) 331.

*Harroun, Anderson & Poseley,* for appellant.

*Jesse Van Valkenburg* and *Horace Van Valkenburg,* for respondent.

YOUNGDAHL, JUSTICE.

In an action for money had and received, there were findings for defendant. Plaintiff moved in the alternative for amended findings or a new trial and appealed from a denial of the motion.

Since 1914 plaintiff has been engaged in the plumbing and heating business in Minneapolis. During the years 1938 and 1939 he also sold electrical appliances in connection with his business. These appliances were sold on conditional sales contracts and financed through the Electric Home and Farm Authority, an agency of the federal government. The Minneapolis General Electric Company, hereinafter called the electric company, was the disbursing agent for the federal agency. Contracts obtained by plaintiff from the sale of merchandise were discounted at the electric company with recourse.

William Gray became an employe of plaintiff in June or July 1938 and continued as such until July 1939. As a salesman, he sold electrical appliances on a commission basis, and he was also plaintiff's bookkeeper. Sometimes the conditional sales contracts were mailed to the electric company. Occasionally plaintiff would deliver them, and at other times Gray took them to the electric company. Usually the electric company mailed the checks representing the proceeds of the discounted contracts to plaintiff, but in a few instances the checks were given to the person delivering the contracts.

On March 3, 1939, the electric company issued its check to plaintiff for $270.75 in payment of three contracts financed by it, namely: the Gilbert Clausen contract for $42.75; the John Fitchette contract for $38; and the Gray contract for $190. The Clausen and Fitchette contracts were legitimate ones under which merchandise had been sold by plaintiff to the purchasers. The Gray contract, however, was fictitious and fraudulent. It was executed

by Gray in pursuance of an unlawful scheme to present it for discount and misappropriate the money therefrom to his own use.

The check covering the three contracts was delivered by the electric company to Gray, who, without authority, placed plaintiff's rubber-stamp endorsement thereon and also forged plaintiff's signature on the check. Gray presented the check for payment at defendant bank on March 6, 1939, and received the sum of $227.91, which represented the proceeds of the check less a debit of $42.84 which plaintiff owed the bank. The check was presented by defendant to the drawee bank, which paid defendant the face amount of the check.

After forging the check, Gray remained in plaintiff's employ for about three months or until July 1939. Upon leaving his employment, Gray wrongfully removed some of plaintiff's books and records, and plaintiff changed the locks on his place of business as a precautionary measure. In January 1940 plaintiff was notified of a default in the fictitious Gray contract. He then learned for the first time of its execution and the resulting forgery. He made a demand upon defendant for payment of the proceeds of the check, which was refused. On August 22, 1940, after learning of the forgery and without defendant's knowledge or consent, plaintiff paid to the electric company the sum of $153.70, the balance owing under the Gray contract. Gray had apparently made payments on the contract and reduced the original amount of $190.

Three or four months prior to the trial of the action Gray was killed in an automobile accident.

Plaintiff contends that a forged or unauthorized endorsement on a check transfers no title to the instrument and that he was entitled to recover from defendant the proceeds of the check. Defendant counters with the defense that the action cannot lie for money had and received, as there was no unjust enrichment by defendant; that the endorsement by rubber stamp was proper; and, finally, that the conduct of plaintiff in failing to discover the wrongful act of his employe and his payment to the electric com-

pany of the balance due on the Gray contract with knowledge of the forgery precludes him from recovering from defendant.

In support of its position as to the rubber-stamp endorsement, defendant cites authority to the effect that such an endorsement is sufficient if made by authority of the payee. It is sufficient to say that the evidence here does not disclose any such authority from plaintiff. Further, the written endorsement of plaintiff was forged upon the check. This defense of defendant therefore is not sustained.

This leaves but two issues, *viz.*, whether an action for money had and received is properly brought when the defendant is not unjustly enriched, and, if that contention is determined adversely to defendant here, whether the conduct of plaintiff precludes his recovery. If the issue with respect to whether the action is properly brought is determined adversely to plaintiff, it will dispose of this appeal. We shall therefore discuss this issue first.

The lower court specifically found that the bank was not unjustly enriched by the transaction in question, and the evidence would not sustain any other conclusion. Although there is authority in other jurisdictions to the contrary, the issue is well settled in our state that an action in *indebitatus assumpsit* will not lie against one who has not been unjustly enriched. Erickson v. Borchardt, 177 Minn. 381, 225 N. W. 145; Burleson v. Langdon, 174 Minn. 264, 219 N. W. 155; Lamson v. Towle-Jamieson Inv. Co. 187 Minn. 368, 245 N. W. 627; Seifert v. Union B. & M. Mfg. Co. 191 Minn. 362, 254 N. W. 273; N. W. Upholstering Co. v. First Nat. B. & T. Co. 193 Minn. 333, 258 N. W. 724.

In Erickson v. Borchardt, *supra,* this court said, 177 Minn. 382, 225 N. W. 145:

"The purpose of the action for money had and received is to compel the restitution of ill-gotten gains, and so it does not lie against one who has not himself taken the plaintiff's money, property or services or received the benefit thereof."

In the instant case, the bank paid out the entire proceeds of the check by cash and credit. It received from the drawee bank only the amount it had disbursed. It was not unjustly enriched. Under the above decisions, therefore, there can be no recovery against the bank under the theory of an action in money had and received.

Plaintiff relies upon the rule that one who has a cause of action in tort may waive the tort and sue on an implied contract for money had and received, and cites Kubat v. Zika, 186 Minn. 122, 242 N. W. 477. This rule does not apply in cases where there is no unjust enrichment. In the Kubat case plaintiff sued on a promissory note. The defendant claimed that plaintiff wrongfully took money or property of defendant. The tort was waived, and defendant counterclaimed on an implied contract to repay the money or property. Plaintiff in that case was unjustly enriched, and that case is therefore clearly distinguishable from the facts here presented. This disposes of the appeal, and it is unnecessary to consider the other defenses asserted by defendant in the court below.

Order affirmed.

